HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARRY S. FREEMAN,<br><br>          Plaintiff,<br><br>     v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>          Defendant. | CASE NO. C11-761RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on the motion of Defendant State Farm Mutual Automobile Insurance Company ("State Farm") for partial summary judgment. Dkt. # 38. No party requested oral argument, and the court finds argument unnecessary. For the reasons stated below, the court GRANTS the motion in part and DENIES it in part.

## II. BACKGROUND

In April 2005, Plaintiff Scott Freeman and his minor son narrowly avoided a head-on collision with a negligent uninsured driver. Mr. Freeman was driving on a two-lane highway with a 55-mile-per-hour speed limit when he encountered an oncoming car in his lane. He swerved to avoid a collision; the rear tire of the other car clipped his front left tire. His airbag engaged and his car came to rest on the shoulder.

Mr. Freeman's son suffered no injury; what injury Mr. Freeman suffered is the focus of this lawsuit. He was able to leave the scene of the accident in his wife's car. He

ORDER – 1

did not seek medical attention until three days after the accident, when he went to Dr. Greg Sharp, D.O. Dr. Sharp began treating Mr. Freeman for soft-tissue injuries sustained in the accident. In the more than seven years since that first visit, Mr. Freeman has received treatment from Dr. Sharp on a regular basis. There is one notable gap in treatment: Mr. Freeman did not see Dr. Sharp at all from July 2005 to April 2006.[1] Mr. Freeman contends that he will never fully recover from the injuries he sustained, or from the emotional trauma of the accident. Dr. Sharp is apparently of two minds on that issue. He told State Farm (Mr. Freeman's car insurer) in September 2005 that he had released Mr. Freeman from treatment in July 2005 because he had "fully recovered" from the car accident and "required no further treatment." Wakefield Decl. (Dkt. # 40), Ex. L. He now declares that Mr. Freeman will likely never recover from the accident. Sharp Decl. (Dkt. # 44) ¶ 5. State Farm sharply disagrees.

State Farm insured Mr. Freeman with a policy that included an uninsured motorist ("UIM") benefit with a $100,000 limit. State Farm has never disputed that the other driver was at fault or that Mr. Freeman suffered injuries that required medical treatment. It quickly paid the $10,000 limit of its policy's personal injury protection ("PIP") benefit.

Until recently, however, State Farm paid Mr. Freeman no UIM benefits. By January 2006, State Farm began discussions with Mr. Freeman about his UIM claim. Mr. Freeman asked to delay the discussion for several months because he was still receiving medical treatment. Mr. Freeman regularly made similar requests until June 2010, when he made his first demand for UIM coverage. He wrote a letter claiming that he continued to receive medical treatment, that he continued to experience emotional distress, that he had lost income because of time away from work for medical treatment and emotional distress, and that he had been unable to participate in outdoor pursuits since the accident.

---

[1] According to State Farm's medical examiner, with the exception of the period from July 2005 to April 2006, Mr. Freeman saw Dr. Sharp several times a month from April 2005 to July 2008. Wakefield Decl. (Dkt. # 40), Ex. A (report of Dr. J. Attaman at 3-7). Dr. Sharp testified to essentially the same dates of treatment. *Id.*, Ex. K (Sharp Depo. at 30-49).

ORDER – 2

Pandey Decl. (Dkt. # 39), Ex. A. Mr. Freeman requested that State Farm pay him the UIM policy limit of $100,000. *Id.* Other than a brief statement of his hourly income and a cursory claim that he had incurred "in excess of $65,000" in medical expenses to date, he did not document his monetary losses. *Id.* Mr. Freeman wrote another demand letter in February 2011. Wakefield Decl. (Dkt. # 40), Ex. E. This time, he claimed medical bills in excess of $85,000 and lost income in excess of $65,000, in addition to ongoing emotional distress. *Id.* Again, he provided no documentation of his medical bills[2] or lost income. He again requested that State Farm pay him the $100,000 limit of his UIM policy. *Id.* His letter suggests that State Farm had, at that time, offered him only $10,000 and had not made clear whether it would waive subrogation of its PIP payment. *Id.*

After State Farm declined his demand, Mr. Freeman sued in April 2011. At about that time, State Farm asked Mr. Freeman to submit to an independent medical examination. Wakefield Decl. (Dkt. # 40) ¶ 2. Mr. Freeman agreed, and State Farm hired Dr. Jason Attaman, D.O., to examine Mr. Freeman and review treatment records from Dr. Sharp. Dr. Attaman issued a detailed report in May 2011. *Id.*, Ex. A. Dr. Attaman agreed that Mr. Freeman was injured, agreed that Dr. Sharp's initial treatment was appropriate, but contended that Mr. Freeman should have sought other medical care after Dr. Sharp's treatment failed to cure his pain. *Id.* at 12-16. At about the same time, State Farm paid Mr. Freeman $5,000 for his UIM claim and waived subrogation of his PIP payment. *Id.* ¶ 8. In April 2012, after State Farm deposed Mr. Freeman and Dr. Sharp, State Farm paid another $45,000. *Id.* ¶ 8, Ex. J.

Mr. Freeman's complaint alleges, among other things, that State Farm breached the insurance policy and acted in bad faith. It also claims that State Farm violated the Insurance Fair Conduct Act ("IFCA," RCW Ch. 48.30).

---

[2] It is possible that State Farm already had documentation of Mr. Freeman's medical expenses, because it suggests that Mr. Freeman had already executed at least one release authorizing State Farm to obtain his medical records. Pandey Decl. (Dkt. # 39) ¶ 3.

ORDER – 3

State Farm concedes that a jury must decide Mr. Freeman's claim for breach of his insurance policy. It asks the court to grant summary judgment against each of Mr. Freeman's other claims. Although Mr. Freeman's complaint does not mention the Washington Consumer Protection Act ("CPA," RCW Ch. 19.86) State Farm asks for summary judgment against his bad faith claim, his CPA claim, and his IFCA claim.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

The court summarizes the three related claims that Mr. Freeman brings in addition to his breach-of-policy claim: bad faith, violation of the CPA, and violation of IFCA. An insured's assertion of bad faith against her insurer is a tort claim. *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503 (Wash. 1992). A denial of coverage is in bad faith if it is unreasonable, frivolous, or unfounded. *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 329-30 (Wash. 2002). In considering an insurance claim, an insurer must give equal consideration to the insured's interests and its own interests. *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 78 P.3d 1266, 1270 (Wash. 2003). The Washington Administrative

ORDER – 4

Code ("WAC") contains The Unfair Claims Settlement Practices Regulation, WAC §§ 284-30-300 to 284-30-450, governing the conduct of insurance companies in handling claims. Violation of those regulations is evidence of bad faith. *See Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 935 (Wash. 1998). Because Washington has declared that the insurance business impacts the public interest, an insured establishes a CPA violation when it proves injury to its business or property as a result of an act in bad faith. *See Overton*, 38 P.3d at 330 (citing RCW § 19.86.020); *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) ("[T]he business of insurance affects the public interest . . . ."); *see also Indus. Indem. Co. of the N.W. v. Kallevig*, 792 P.2d 520, 530 (Wash. 1990) (holding that a single violation of WAC § 284-30-330 is sufficient to support a CPA violation). Unlike the CPA, IFCA targets the insurance business specifically. Among other things, it gives a cause of action to a first-party insured against an insurer who "unreasonably denie[s] a claim for coverage." RCW § 48.30.015(1). Many violations of the Washington insurance regulations are per se violations of IFCA. RCW § 48.40.015(5) (listing WAC sections).

**A.    A Jury Must Decide Mr. Freeman's Bad Faith and CPA Claims.**

The court cannot grant summary judgment against Mr. Freeman's bad faith or CPA claim. State Farm insists that its refusal to pay Mr. Freeman what he wanted was reasonable, but a reasonable jury might disagree. At this point, State Farm has paid Mr. Freeman $60,000 on a claim for which it refused to pay him anything until shortly before Mr. Freeman sued. State Farm's primary basis for denying coverage[3] was its dispute over the amount of Mr. Freeman's reasonable medical expenses and his lost income. The record suggests, however, that State Farm did little (or perhaps nothing) to investigate his

---

[3] State Farm insists that it did not deny coverage because it never denied that Mr. Freeman was entitled to UIM benefits, it merely disagreed about the amount of those benefits. For purposes of an insured's extracontractual claim, a failure to pay the amount the insured requests is a denial of coverage. Were it otherwise, an insurer could avoid extracontractual liability merely by conceding coverage, paying its insured one dollar, and refusing to pay any more.

ORDER – 5

medical expenses or lost income until Mr. Freeman filed this lawsuit. State Farm insists that the medical evidence permits only one conclusion: that Mr. Freeman suffered minor injuries for which he deserved little compensation. But even if the jury heard only from Dr. Attaman, it might conclude otherwise. Dr. Attaman agrees that Mr. Freeman was injured, and agrees that Dr. Sharp's treatment was appropriate. He merely believes that after initial treatment failed to cure Mr. Freeman's pain, he should have pursued another course of treatment. A jury might agree, and might conclude that Mr. Freeman has failed to mitigate his damages. But it might not. Similarly, a jury might find it damning that Dr. Sharp believed that Mr. Freeman had fully recovered from his injuries in July 2005, but later changed his mind. On the other hand, a jury might decide that Dr. Sharp only changed his mind because Mr. Freeman returned to him after his pain failed to subside.

It is possible, of course, that a jury will agree that State Farm reasonably handled Mr. Freeman's claim and reasonably estimated how much it should have paid. But that conclusion is not the only one a jury could reach.[4] Summary judgment is not appropriate as to Mr. Freeman's bad faith and CPA claims.

**B.     The Court Dismisses Mr. Freeman's IFCA Claim.**

But for one concern unique to IFCA, the court would rule that Mr. Freeman's IFCA claim must go to a jury because of the same factual disputes that make trial

---

[4] State Farm wrongly contends that *Keller v. Allstate Ins. Co.*, 915 P.2d 1140 (Wash. Ct. App. 1996) stands for the proposition that a dispute over the amount of insurance coverage is not bad faith as a matter of law. In *Keller*, the insureds tried their bad faith claim on a stipulated record after winning more than $70,000 at an earlier trial when their insurer had offered only $8,000. *Id.* at 1142-43. Although the second trial court found that the insured did not act in bad faith, it did not make that ruling as a matter of law. *Id.* at 1143. The court of appeals rejected the insured's claim that the court should set aside the trial court's verdict and rule that the insurer acted in bad faith as a matter of law. *Id.* at 1146. The *Keller* court quoted commentary from an insurance treatise suggesting that a "legitimate controversy" over the amount of benefits is not bad faith. *Id.* at 1145. It did not suggest that a jury should not decide whether a particular controversy over the amount of benefits is "legitimate." Indeed, it rejected any "strict number comparison approach," and instead emphasized the need to consider the reason for a disparity between an insurer's initial offer and the insured's ultimate recovery. *Id.*

ORDER – 6

necessary on his CPA and bad faith claims. But IFCA, unlike the other claims, has a pre-suit notice provision:

> (a) Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner. . . .
>
> (b) If the insurer fails to resolve the basis for the action within the twenty-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice.
>
> (c) The first party claimant may bring an action after the required period of time in (a) of this subsection has elapsed.
>
> (d) If a written notice of claim is served under (a) of this subsection within the time prescribed for the filing of an action under this section, the statute of limitations for the action is tolled during the twenty-day period of time in (a) of this subsection.

RCW § 49.30.015(8). There is no dispute that Mr. Freeman did not provide notice to State Farm or the insurance commissioner before filing suit. State Farm contends that the court must dismiss Mr. Freeman's IFCA claim for that reason. Mr. Freeman contends that failure to provide statutory notice is an affirmative defense, and that State Farm abandoned that affirmative defense by failing to plead it in its answer.

State Farm failed to plead IFCA's notice requirements as an affirmative defense in its answer. State Farm contends that it adequately raised the issue by pleading that "portions of plaintiff's Complaint fail to state a claim upon which relief can be granted" as an affirmative defense. Answer (Dkt. # 6) at 6. State Farm is mistaken. To begin, failure to state a claim is not an affirmative defense.[5] Putting that aside, no one reading this "defense" would have been on notice that State Farm intended to invoke IFCA's pre-

---

[5] In lieu of an answer, a party may bring a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). State Farm inexplicably contends that "failure to state a claim" is among the affirmative defenses enumerated in Fed. R. Civ. P. 8(c). Def.'s Reply (Dkt. # 45) at 7. It is not. Moreover, State Farm's citations to several cases in which a court ruled on a statute of limitations defense via a Rule 12(b)(6) motion provide no support for the notion that invoking the phrase "failure to state a claim" satisfies a defendant's Rule 8 obligation to plead affirmative defenses in its answer. Def.'s Reply (Dkt. # 45) at 7.

ORDER – 7

1 suit notice provision. State Farm suggests that its generic answer was sufficient because
2 Mr. Freeman's complaint was not specific about his IFCA claim. Again, State Farm is
3 mistaken. The complaint cited RCW § 48.30.010, which is part of IFCA. Mr. Freeman's
4 complaint gave adequate notice of his IFCA claim; State Farm's answer did not give
5 adequate notice of its IFCA defense.

6 So far as the record reveals, Mr. Freeman did not know that State Farm intended to
7 invoke IFCA's pre-suit notice provision until it filed this summary judgment motion. In
8 the Ninth Circuit, a party may raise an affirmative defense for the first time on summary
9 judgment as long as the opposing party does not suffer prejudice. *Rivera v. Anaya*, 726
10 F.2d 564, 566 (9th Cir. 1984); *Camarillo v. McCarty*, 998 F.2d 638, 639 (9th Cir. 1993).
11 The plaintiff bears the burden of demonstrating prejudice. *Ledo Fin. Corp. v. Summers*,
12 122 F.3d 825, 827 (9th Cir. 1997); *Rivera*, 726 F.2d at 566 (noting that "no prejudice has
13 been claimed by appellants"). Mr. Freeman offers no evidence of prejudice, he simply
14 asserts that State Farm's delay in raising the defense was an "ambush." Pltf.'s Opp'n
15 (Dkt. # 42) at 10. That does not suffice. *Ledo*, 122 F.3d at 827 (finding no waiver,
16 because "[a]lthough [the plaintiff] suggest[ed] that the five month delay in asserting the
17 [affirmative] defense amounted to an 'ambush,' it points to no tangible way in which it
18 was prejudiced by the delay"). The court finds that State Farm has not waived its lack-
19 of-notice defense.

20 The court holds that IFCA's pre-suit notice provision is mandatory, and that
21 failure to satisfy it mandates dismissal of an IFCA claim. No Washington court has
22 construed IFCA's pre-suit notice provision. Every federal district court to do so has held
23 that the provision mandates dismissal of an IFCA claim that a plaintiff brings without
24 giving notice. *Norgal Seattle P'ship v. Nat'l Sur. Corp.*, No. C11-720RSL, 2012 U.S.
25 Dist. LEXIS 55256, at *10-12 (W.D. Wash. Apr. 19, 2012); *Hiller v. Allstate Prop. &*
26 *Cas. Co.*, No. 11-cv-291-TOR, 2012 U.S. Dist. LEXIS 84862, at *24-25 (E.D. Wash.

ORDER – 8

Jun. 19, 2012); *see also Polygon Northwest Co. v. Nat'l Fire & Marine Ins. Co.*, No. C11-92Z, 2011 U.S. Dist. LEXIS 56408, at *5 n.3 (W.D. Wash. May 24, 2011) (dismissing IFCA claim, as an alternative holding, where Plaintiff failed to wait 20 days after giving notice before suing).  Like those courts, this court agrees that IFCA's pre-suit notice provision is a mandatory condition precedent to an IFCA lawsuit.  The court accordingly dismisses Mr. Freeman's IFCA claim.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS State Farm's motion for partial summary judgment (Dkt. # 38) solely as to Mr. Freeman's IFCA claim, and denies the motion in all other respects.  So that the parties may incorporate this ruling into their motions in limine, the court continues the parties' deadline for filing motions in limine in accordance with Local Rules W.D. Wash. CR 7(d)(4) from July 16 to July 19.

DATED this 16th day of July, 2012.

*(signature)*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9