HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY S. FREEMAN,

          Plaintiff,

   v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

CASE NO. C11-761RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the parties' motions in limine and a motion from Defendant State Farm Mutual Automobile Insurance Company ("State Farm") to reconsider the court's July 16 order denying in part State Farm's motion for summary judgment.  The court DENIES the motion for reconsideration (Dkt. # 59) and GRANTS in part and DENIES in part each of the motions in limine (Dkt. ## 48, 50).

## II.  BACKGROUND

A jury trial will commence on August 21 in this insurance dispute.  Plaintiff Larry Freeman claims that State Farm breached its car insurance policy by failing to pay enough from the policy's uninsured motorist ("UIM") coverage to compensate him for injuries he suffered in an April 2005 car accident.  State Farm concedes that the uninsured driver who collided with Mr. Freeman's car was at fault, and concedes that Mr. Freeman was injured in the accident.  The parties' sole dispute under the policy is how

ORDER – 1

much compensation Mr. Freeman should have received for his alleged physical and emotional injuries.

In addition to Mr. Freeman's claim on the policy, he brings causes of action for bad faith and violation of the Washington Consumer Protection Act ("CPA") to remedy what he contends were State Farm's unlawful practices in handling his UIM claim.

### III.   MOTIONS IN LIMINE

Each party has brought a multiple-part motion in limine.  The court now considers each part.

**A.     State Farm's Motion in Limine**

**1.     Two-Phase Trial**

In August 2011, the court denied the parties' joint request to bifurcate this case between Mr. Freeman's breach-of-policy claim and his remaining claims.  The court found that their proposal, which would have converted this case into two cases, each with its own trial and discovery period, was not an appropriate use of court resources.  The court observed, however, that it had accommodated a limited form of bifurcation in similar cases in the past.  In another case arising out of a UIM claim, the court tried the plaintiff's breach-of-policy claim and her remaining claims in two consecutive phases before the same jury.

State Farm requests a similar trial in this case.  Mr. Freeman raises two objections: that the "facts regarding coverage and bad faith are very much intertwined" and that he will suffer prejudice because the jury may reach a verdict against him in the first phase merely to avoid having to try the second phase.

Mr. Freeman's first objection has both a faulty premise and a lack of any argument to support it.  The bifurcation State Farm requests is not between "coverage and bad faith," it is between a determination of the amount that Mr. Freeman is due for his injuries from the accident and the amount he is due because of State Farm's allegedly

ORDER – 2

unlawful conduct.  If Mr. Freeman wished to argue that his personal injuries and his insurance injuries were inextricably intertwined, he should have demonstrated as much with specific examples.  The court is aware of no significant overlap.  Mr. Freeman's medical providers, for example, have no testimony to offer about State Farm's claims handling.

Mr. Freeman's second objection also arises from a misunderstanding.  Neither the parties nor the court will inform the jury that their verdict in the first phase will have an impact on whether a second phase will occur.  Instead, the court will inform the jurors at the outset of the case that they will try a second phase, but will not reveal anything else about the nature of the second phase.[1]  If the jury's verdict in the first phase leads the parties to decide that the second phase is unnecessary, that will be the parties' choice alone.  If the jury's verdict in the first phase makes a second phase unnecessary as a matter of law (assuming that is even possible), the court will inform the jury after the first phase has concluded.  In any event, Mr. Freeman will not suffer prejudice.

The court finds it both efficient for the court and more effective for the jury to conduct a two-phased trial.  No party will suffer prejudice, and a two-phased trial removes the possibility that a jury might allow its view of State Farm's conduct to influence its assessment of Mr. Freeman's physical and emotional injuries.  The court therefore grants State Farm's request for a two-phased trial.  The parties shall come to the August 7 pretrial conference prepared to estimate how long they will need to conduct each phase of the trial.

---

[1] For example, in its previous two-phased trial, the court made the following statement to the venire before beginning jury selection:

> This case will involve two phases.  In the first phase, the jury will decide the value of [plaintiff]'s claim for her injuries in the car accident.  The jury will deliver a verdict on that issue.  Then a second phase of the trial will begin that involves different issues.  I will tell the jury more about those issues when the second phase begins.

ORDER – 3

1    **2.      Expert Testimony on Mental Health Issues**

2            State Farm asks the court to prevent both Mr. Freeman himself and Dr. Greg Sharp

3    from offering expert testimony about Mr. Freeman's mental health.  Among other things,

4    Mr. Freeman contends he is entitled to compensation for his emotional distress as a result

5    of the accident.

6            A party must disclose witnesses who will offer opinion testimony early in

7    discovery.  Fed. R. Civ. P. 26(a)(2)(A) (requiring identification of "any witness [a party]

8    may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705").

9    Experts who a party retains specifically to provide expert testimony (or employees of a

10   party who routinely provide expert testimony) must also provide a written report in

11   accordance with Rule 26(a)(2)(B).  Other experts need only disclose the subject matter on

12   which they will testify and provide a "summary of the facts and opinions to which the

13   witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  Mr. Freeman, who is a

14   psychiatrist,[2] did not disclose that he would offer expert testimony until a few days ago.

15   Dr. Sharp, the osteopathic physician who treated Mr. Freeman for his soft-tissue injuries,

16   disclosed only that he was Mr. Freeman's treating physician, without specifying what

17   facts or opinions he would present at trial.  Wakefield Decl. (Dkt. # 51), Ex. 3 (Pltf.'s

18   Feb. 2012 expert disclosures).

19          Mr. Freeman may not offer expert testimony on his emotional distress.  If Mr.

20   Freeman believes that he is his own treating physician, he was obligated at a minimum to

21   disclose that belief well in advance of trial.  If Mr. Freeman believes that he is not his

22   own treating physician, but that he is nonetheless qualified to opine about his emotional

23   injuries, he was obligated to provide a full expert report.  Either disclosure would have

24   permitted State Farm, at a minimum, to depose Mr. Freeman about his self-diagnoses or

---

[2] Mr. Freeman has an M.D.  The court has, to date, referred to him as Mr. Freeman rather than
Dr. Freeman solely to avoid confusing him with the physicians who will provide testimony in
their professional capacities.

ORDER – 4

self-treatment.  It is far too late now to cure that error.  Mr. Freeman will not offer expert testimony at trial.

Dr. Sharp did not disclose that he treated Mr. Freeman for any mental health problems.  He did not disclose as much in his formal expert disclosures, and he did not disclose as much over the course of this litigation.  As was the case with Mr. Freeman, that failure in disclosure is reason enough to bar him from testifying about mental health.  Even assuming, however, that Dr. Sharp had adequately disclosed that he was Mr. Freeman's treating mental health physician, there is no evidence in the record that would support the conclusion that Dr. Sharp is qualified to offer testimony about his mental health.  Although Mr. Freeman asserts in opposition to State Farm's motion in limine that osteopathic medicine encompasses the treatment of mental health, Dr. Sharp himself submitted no evidence about his qualifications to offer professional mental health evaluation or treatment.  The only *evidence* on that issue comes from State Farm's expert osteopathic physician, Dr. Jason Attaman.  Dr. Attaman declares that osteopathic physicians are not qualified to diagnose or treat mental health conditions.  Attaman Decl. (Dkt. # 52) ¶¶ 5-6.  That unchallenged evidence is an independent basis to bar Dr. Sharp's opinions regarding Mr. Freeman's mental health.

The court does not suggest, however, that any witness is barred from testifying as to their direct factual observations that bear on Mr. Freeman's mental state.

### 3.    Testimony About Attorney Fees

State Farm asks the court to bar "any reference to or suggestions that [Mr. Freeman] has incurred or will incur attorney's fees."  Mr. Freeman responds that such evidence is relevant to his claim for attorney fees in accordance with *Olympic Steamship Co. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991).

What Mr. Freeman fails to acknowledge is that the court, not the jury, will decide whether he is entitled to attorney fees.  The attorney fee remedy that *Olympic Steamship*

ORDER – 5

and its progeny recognize is an equitable remedy.  *McGreevy v. Or. Mut. Ins. Co.*, 904 P.2d 731, 736 (Wash. 1995); *Panorama Vill. Condo. Owners Ass'n v. Allstate Ins. Co.*, 26 P.3d 910, 917 (Wash. 2001).  If there is any authority permitting a party to seek that remedy from the jury, rather than the court, Mr. Freeman has not cited it and the court is not aware of it.  *Cf. Clausen v. Icicle Seafoods, Inc.*, 272 P.3d 827, 833 (Wash. 2012) (holding, in admiralty case, that "[a]llowing a judge to determine and calculate an equitable fees award is consistent with our practice in Washington and makes procedural sense").

Mr. Freeman does not argue that he is entitled to have the jury decide the size of his attorney fee award, or even that he wants the jury to make that decision.  Instead, he seems to believe that testimony about his fees will help him prove that State Farm "bullied" him.  Mr. Freeman thus hopes to prejudice the jury in his favor, not to present evidence relevant to an issue they will decide.  The court will not permit him to do so.  Courts have held that even revealing that a post-trial attorney fee award is a possibility raises the danger of undue prejudice.  *See*, *e.g.*, *Brooks v. Cook*, 938 F.2d 1048, 1051 (9th Cir. 1991) (holding that trial court abused its discretion by informing jury that a nominal damages award would entitle plaintiff to claim attorney fees).  No party will offer testimony or argument about the amount of Mr. Freeman's attorney fees or that an attorney fee award is a possibility.

Although testimony about the amount of Mr. Freeman's attorney fees is irrelevant, as is testimony or argument about the possibility of an attorney fee award, the court cannot prevent the jury from guessing that Mr. Freeman has incurred attorney fees.  Mr. Freeman will have counsel at trial, and at least in the second phase of the trial, it is likely that the jury will hear testimony about his pro se efforts to obtain compensation from State Farm before he hired a lawyer.  Even if it were possible to hide this evidence from the jury, it is unnecessary.  There is no harm in permitting the jury to assume that Mr.

ORDER – 6

Freeman has incurred attorney fees.  Harm will arise only if the parties offer evidence or argument about the possibility of an attorney fee award or the amount of that award.

### 4.    Lay Testimony About Pain and Suffering

Although State Farm acknowledges that lay witnesses may testify about Mr. Freeman's pain and suffering, it asks the court to bar any impermissible speculation or opinion about his pain and suffering.  The court cannot grant this motion.  If State Farm feels that a percipient witness's testimony about pain and suffering has ventured too far into the realm of speculation or opinion, State Farm must object to the testimony when the witness offers it at trial.

### 5.    Evidence Not Disclosed During Discovery

State Farm asks the court to bar the introduction of any evidence that Mr. Freeman did not disclose during discovery.  State Farm does not, however, identify any undisclosed evidence that it fears Mr. Freeman will try to introduce at trial.  The court therefore denies the motion, and directs State Farm to object during trial if Mr. Freeman introduces evidence that he improperly withheld during discovery.

### 6.    Improper Jury Arguments

The court grants State Farm's request to prevent Mr. Freeman's counsel from arguing that jurors should place themselves in his position when determining the damages to which he is entitled or that they should "send a message" to State Farm.  Mr. Freeman concedes that such arguments are inappropriate.  He merely contends that he can argue that the jury should act as the "conscience of the community" provided he does not do so in an unduly prejudicial way.  State Farm made no motion regarding a "conscience of the community" argument, and the court declines to offer an advisory opinion.

ORDER – 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Mr. Freeman's Motion in Limine**

     **1.    Collateral Source Evidence**

Mr. Freeman asks the court to enforce the well-established rule against evidence of benefits from a collateral source. He does not, however, identify any specific collateral source evidence that he wishes to exclude.

State Farm points out that to the extent that *State Farm* was the source of Mr. Freeman's collateral benefits (for example, its payment of $10,000 under the policy's personal injury protection clause), the jury must hear that evidence because it is squarely relevant to Mr. Freeman's bad faith and CPA claims. The court concurs, and holds that where State Farm is the collateral source of benefits, evidence of those benefits is relevant, at least in the second phase of the trial. If State Farm attempts to introduce evidence of other collateral sources, Mr. Freeman may object at trial.

     **2.    Evidence That Mr. Freeman Sought Advice From Other Attorneys**

The court grants Mr. Freeman's request to bar evidence or argument that he consulted with attorneys other than his trial counsel, a request that State Farm does not oppose. State Farm notes that it may point out that Mr. Freeman did not have counsel during much of the period in which he attempted to negotiate his claim with State Farm. The court will permit it to do so in the second phase of the trial, because it will help the jury understand why State Farm initially communicated directly with Mr. Freeman.

**IV.   MOTION FOR RECONSIDERATION**

State Farm asks the court to reconsider its ruling that a jury must decide Mr. Freeman's bad faith and CPA claims. State Farm carries a heavy burden:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rules W.D. Wash. CR 7(h)(1). State Farm has made neither showing. The court will not reconsider its ruling.

ORDER – 8

## V.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part each of the parties' motions in limine.  Dkt. ## 48, 50.  The court DENIES State Farm's motion for reconsideration.  Dkt. # 59.

DATED this 3rd day of August, 2012.

_Richard A Jones_

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9